UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

AT&T Communications of the Midwest,
Inc., an Iowa corporation,

and

TCG Minnesota, Inc., a Delaware
corporation,

     Plaintiffs,

v.             MEMORANDUM OPINION
               AND ORDER
             Civil No. 06-3786

Qwest Corporation, a Colorado
corporation,

     Defendant.

_____

  William E. Flynn, Thomas F. Pursell and Meghan M. Elliott, Lindquist & Vennum, PLLP, for and on behalf of Plaintiffs.

  Larry D. Espel and William J. Otteson, Greene Espel, PLLP, for and on behalf of Defendant.

_____

  This matter is before the Court upon Defendant Qwest Corporation's ("Qwest") motion to dismiss.

Background

  On September 20, 2006, Plaintiffs AT&T Communications of the Midwest, Inc. ("AT&T") and TCG Minnesota, Inc. ("TCG") filed this action against Qwest

1

Corporation ("Qwest") in Minnesota state court. In their Complaint, Plaintiffs allege that pursuant to the federal Telecommunications Act of 1996 (the "1996 Act") incumbent telecommunications carriers, such as Qwest, are required to enter into contracts with other telecommunications carriers that request access to the incumbent's network. Complaint ¶ 1. These contracts, called "interconnection agreements," set out the incumbent's obligations to provide interconnection, services, and/or network elements to competing carriers and the applicable rates. Id. Plaintiffs also allege that the 1996 Act requires that all interconnections must be filed with the appropriate state commission, and once approved, the incumbent carrier must make available any interconnection, service or network element provided under the agreement to any other requesting carrier. Id.

Plaintiffs allege that Qwest entered into secret interconnection agreements with two telecommunications providers in Minnesota, Eschelon Telecom ("Eschelon") and McLeodUSA Telecommunications Services, Inc. ("McLeodUSA"). Id. ¶ 3. These secret agreements provided a lower rate to Eschelon and McLeodUSA, and Qwest did not file these agreements with the Minnesota Public Utilities Commission ("MPUC"). Id. Because these agreements were not filed, Plaintiffs did not know about them, and could therefore not demand the same discounted rate as they were entitled to do by law. Id.

Plaintiffs allege that the MPUC later determined that Qwest "knowingly and intentionally violated" the 1996 Act and state anti-discrimination laws by failing to file the interconnection agreements, and by providing lower rates to some carriers and not others.  Id. ¶ 4.  Plaintiffs allege that in addition to violating state and federal law, Qwest's intentional concealment of the secret agreements constituted a breach of its interconnection agreements with Plaintiffs, as well as fraud.  Id. ¶¶ 5 and 6.

Based on this conduct, Plaintiffs have asserted the following claims against Qwest: Minnesota state law claims of breach of contract and fraud, and violations of Minnesota anti-discrimination statutes, Minn. Stat. §§ 237.09, 237.60, subd. 3, and 237.121, subd. 5.

In lieu of an answer, Qwest has filed this motion to dismiss.  It is Qwest's position that Plaintiffs' claims, although styled as state law claims, are really based in federal law, and are therefore barred by the two year statute of limitations provided in the 1996 Act, 47 U.S.C. § 415.  By contrast, the applicable state statute of limitations is six years.  Minn. Stat. § 541.05(1) (2) and (6)(governing actions for breach of contract, statutory liability and fraud).  Qwest further argues that the claims are barred by the doctrines of collateral estoppel and res judicata.

Standard

For the purposes of Qwest's motion to dismiss, the Court takes all facts alleged in Plaintiffs' Complaint as true. Westcott v. Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiffs. Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986). The Court applies those standards in the following discussion.

Analysis

Qwest argues that notwithstanding Plaintiffs' artful pleading, Plaintiffs' claims arise under the 1996 Act, and are thus subject to the Act's two year statute of limitations. Qwest asserts that throughout the Complaint, Plaintiffs repeatedly discuss the requirements of the 1996 Act that incumbent carriers file interconnection agreements with the MPUC, and make available any interconnection, service or network provided under the agreement to any other requesting carrier. It is Qwest's position that based on these allegations, Plaintiffs are simply claiming that Qwest violated the 1996 Act.

Neither the Eighth Circuit nor the United States Supreme Court has addressed the narrow issue of whether the statute of limitations period contained in the 1996 Act applies to state common law and statutory claims involving allegations that a carrier did not file interconnection agreements as required by

state and federal law.

Qwest asserts that decisions from other circuits support its position. One such case is MFS Int'l, Inc. v. Int'l Telcom Ltd., 50 F. Supp. 2d 517, 520 (E.D. Va. 1999). In MFS, the court found that state law claims of breach of contract and conversion, seeking to enforce contract provisions as to rates and services that rely on an underlying tariff, are preempted by the Federal Communications Act. The court thus determined the Act's two year statute of limitations applied.

If Plaintiffs' claims relied only on federal law, the analysis in MFS could be applied here. But that is not the case, however. In addition to the common law claims of breach of contract and fraud, Plaintiffs have also asserted that Qwest's failure to file the interconnection agreements violates Minn. Stat. §§ 237.09, 237.60, subd. 3 and 237.121, subd. 5. A previous decision from this Court has held that these state statutes are not preempted by § 252 (i) of the 1996 Act. Qwest Corporation v. The Minnesota Public Utilities Commission, 2004 WL 1920970, at *6 (D. Minn. 2004)(recognizing that "Congress did not intend for § 252(i) to thoroughly occupy discrimination analysis regarding an ILEC's failure to file an ICA."). Qwest has not provided the Court any argument or authority to support its position that the federal statute of limitations should apply to state statutory claims that are not preempted. Because Plaintiffs' common law claims rely on both federal and state law, the Court further finds the applicable state

statutes of limitation apply to the common law claims as well.

Although not specifically on point, the Eighth Circuit Court of Appeals decision in <u>Connect Communications Corporation v. Southwestern Bell Telephone, L.P.</u>, 467 F.3d 703 (8th Cir. 2006) lends support to the Court's determination that the state claims should be governed by the applicable state statutes of limitation. At issue in <u>Connect</u> was whether ISP bound calls were local calls, which would subject them to the reciprocal compensation under the interconnection agreement between the parties. <u>Id.</u> at 704. The court found that at the time the parties entered into the interconnection agreement, the FCC had not determined whether traffic transmitted to ISPs was subject to reciprocal compensation as local traffic under the Act or not. <u>Id.</u> at 705. The court recognized that federal law "plays a large role in this dispute", but nonetheless held that "the ultimate issue" in the case was contract interpretation, and that such claim would be governed by state law. <u>Id.</u> at 713.

The Court acknowledges the multiple commission decisions and the district court decision from the District of Nebraska in <u>AT&T Communications et al. v. Qwest Corp.</u>, Civil No. 8:06CV625 (D. Neb. Feb. 27, 2007)[1] that have adopted Qwest's arguments and dismissed similar cases on the basis such cases were time

---

[1] These decisions have been submitted to the Court pursuant to numerous letter briefs requesting permission to file supplemental authority. The Court has accepted these submissions and has considered them in its determination.

6

barred pursuant to 47 U.S.C. § 415(b). None of those decisions are binding on this Court, nor are they persuasive.

For example, with respect to the decision from the District of Nebraska, this Court notes that Plaintiffs asserted both state common law and state statutory claims against Qwest. Otteson Aff., Ex. 5 (Complaint filed in the Nebraska state court). In granting Qwest's motion to dismiss, the district court found that the "ultimate issue in this case is an interpretation of federal law." AT&T., Civil No. 8:06CV625 at 6. There was no discussion or analysis, however, as to whether the state statutes were preempted and the impact the state statutes had on the common law claims. The same is true for many of the commission decisions submitted by Qwest in support of its motion.[2]

As noted previously, the applicable state statute of limitations for the Plaintiffs' claim is six years. Minn. Stat. § 541.05(1), (2) and (6). In its brief, Qwest asserts that Plaintiffs "discovered, or by exercise of reasonable diligence should have discovered, its right to apply for relief" by March 2002. Qwest Memorandum in Support of Motion to Dismiss, p. 18. Thus, adopting the accrual date put forth by Qwest, Plaintiffs' claims are timely as this case was commenced

---

[2]By contrast, the Oregon Commission dismissed the state statutory claims on the basis that such statutes did not provide the Commission the jurisdiction to grant the relief request. Otteson Aff., Ex. 1, p. 4. Thus, the analysis concerning the applicability of the federal statute of limitations applied only to the breach of contract claim.

in September 2006, well before the six year limitation would have run.

Finally, Qwest moves for the dismissal on collateral estoppel grounds. Qwest asserts that the decision of the Oregon Public Utility Commission ("OPUC"), dismissing Plaintiffs' claims on the basis such claims are time-barred[3], should be given preclusive effect in this case.  This argument must be rejected.

The Eighth Circuit has recognized that state commissions are not bound by decisions reached by other state commissions.  <u>Connect</u>, 437 F.3d at 713 (citing <u>Global Naps, Inc. v. Mass. Dep't Telecomm. & Energy</u>, 427 F.3d 34, 48 (1st Cir. 2005)).  That numerous state commissions could be addressing similar issues will affect application of collateral estoppel given the possibility of inconsistent determinations.  Collateral estoppel does not apply when the determination to be given preclusive effect is inconsistent with another determination of the same issue.  <u>Joslyn Mfg. Co. v. Liberty Mutual Ins. Co.</u>, 939 F. Supp. 603, 611 (N.D. Ill 1996) (citing <u>Restatement (Second) of Judgments</u>, § 29(4)(1982)).  The parties note that this case is one of seven pending in federal and state courts or commissions.

Plaintiffs inform the Court that the Washington State Utilities and Transportation Commission has issued a decision contrary to that of the OPUC. <u>See</u> <u>AT&T Commc'ns of the Pac. N.W., Inc. v. Qwest, Corp.</u>, Order 06, Order

---

[3]This decision is attached as Exhibit 1 to the Otteson Declaration.

Affirming Interlocutory Order; Allowing Amendment of Complaint; Denying Motion for Summary Determination, Docket UT-051682 (Wash. UTC Dec. 22, 2006) (Attachment to Plaintiffs' Letter Brief dated December 28, 2006). Under these circumstances, the Court finds the OPUC decision should not be given preclusive effect.

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss [Doc. No. 3] is DENIED.

Date: March 28, 2007

s / Michael J. Davis
Michael J. Davis
United States District Court